**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Mezaki, individually and as guardian ad litem of Amanda M. Mezaki, Natalie A. Mezaki and Miles J. Mezaki, minors,<br><br>          Plaintiff,<br><br>vs.<br><br>Eurocopter, et al.,<br><br>          Defendants. | No. CV-06-1218 PCT-DGC<br><br>**ORDER SETTING TRIAL** |

A Final Pretrial Conference was held on April 30, 2008. Counsel appeared on behalf of Plaintiff and Defendants. On the basis of the parties' written submissions and matters discussed during the conference,

**IT IS HEREBY ORDERED:**

1. Trial in this matter shall begin in Prescott, Arizona, on **September 2, 2008, at 9:00 a.m.**

2. The trial shall last **16** days (September 2-5, 9-12, 16-19, and 23-26, 2008). Plaintiff shall be allotted **48** hours of trial time and Defendants shall be allotted **36** hours of trial time. The Court will keep track of each side's time. Opening and closing statements, direct examination, and cross-examination shall be counted against the parties' allotted time.

3. The parties' proposed final pretrial order was approved by the Court as the final pretrial order in this case. The order shall govern the presentation of evidence and other

1 trial issues, and, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, shall be
2 modified only to prevent manifest injustice. Evidence, objections, legal arguments, and relief
3 not requested or identified in the order shall not be available at trial, except to prevent
4 manifest injustice.

5     4. A hearing will be held on **July 1-2, 2008, beginning at 9:00 a.m.**, in
6 Courtroom 603, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street,
7 Phoenix, Arizona 85003. The Court will set aside six hours each day for the hearing, but
8 anticipates that less time will be required. The following matters will be addressed during
9 the hearing:

10     a. The parties shall provide comments on the Court's proposed preliminary
11 jury instructions and jury questionnaire, both of which were provided to the parties at the
12 Final Pretrial Conference. The jury questionnaire must be mailed by the Court's jury office
13 by mid-July.

14     b. The parties shall identify the portions of NTSB reports that they cannot
15 agree are admissible. The parties shall confer in advance of the July 1-2, 2008 hearing to
16 identify portions of the reports on which they disagree. These issues were raised in
17 Plaintiff's Motion in Limine No. 4 (Dkt. #72) and Defendants' Motion in Limine No. 4 (Dkt.
18 #83). Once the Court has received copies of the reports on which the parties disagree, the
19 Court will rule on their admissibility.

20     c. The parties shall present focused evidence on the admissibility of the
21 hydraulic exemplar test performed by Plaintiff's expert as addressed in the parties' briefing
22 on Defendants' Motion in Limine No. 7 (Dkt. #86).

23     d. The parties shall present focused evidence on the *Daubert* and Federal
24 Rule of Evidence 702 issues raised with respect to Plaintiff's expert witness Coffman as
25 addressed in the parties' briefing on Defendants' Motion in Limine No. 8 (Dkt. #87).

26     e. The parties shall present focused evidence on the *Daubert* and Rule 702
27 issues raised with respect to Plaintiff's expert witness Moffat as addressed in the parties'
28 briefing on Defendants' Motion in Limine No. 11 (Dkt. #90).

1         f.        On or before the close of business on **June 25, 2008**, each side shall submit one ten page memorandum addressing the *Daubert* issues to be considered at the hearing. No responses or replies will be permitted.

      5.      The Court addressed Plaintiff's Motion in Limine No. 1 (Dkt. #69). For reasons stated on the record, the Court **denied** the motion with respect to passenger complaints regarding the flying of Mr. Mezaki. The Court concluded that the four-part test set forth in *Duran v. City of Maywood*, 220 F.3d 1127, 1132-33 (9th Cir. 2000), was satisfied, and that the complaints about Mr. Mezaki's flying were relevant to prove that Sundance – a non-party at fault in this case – had notice of Mr. Mezaki's allegedly reckless flying. The Court **granted** the motion with respect to the 2001 videos addressed in the motion. It does not appear that the videos are relevant to the issue of Sundance's notice, and they appear otherwise to fall within Rule 404(b). The Court granted the motion, however, without prejudice to Defendants seeking the admission of the videos at trial.

      6.      The Court addressed Plaintiff's Motion in Limine No. 2 (Dkt. #70). This motion concerned an FAA Airworthiness Directive ("AD") concerning modifications to the aircraft that post-dated the accident. The Court **denied** the motion without prejudice to the parties raising it again at the time of trial. Because there is some uncertainty as to the level of collaboration that occurred between Defendants and the FAA in connection with the issuance of the AD, the Court concluded that it would not be able to rule on this issue until trial. If the Court concludes that Defendants and the FAA collaborated in the issuance of the AD, the Court will be more inclined to conclude that admission of the AD would implicate the policies of Rule 407. On the other hand, if the FAA issued the AD on the basis of its independent determination, not on the basis of Defendants' suggestions or service bulletins, the Court will be more inclined to conclude that admission of the AD will not implicate the policies of Rule 407. *See Weinstein's Federal Evidence* §407.05[3]. Because the Court has not yet ruled on the admissibility of the AD, it should not be mentioned to the jury until after the Court has ruled.

- 3 -

1      7.    The Court addressed Plaintiff's Motion in Limine No. 3 (Dkt. #71).  For reasons stated on the record, the Court **granted** the motion.  Defendants will not be permitted to present evidence concerning Mr. Mezaki's failure of a check ride in 2000.

    8.    The Court addressed Plaintiff's Motion in Limine No. 4 (Dkt. #72).  The parties disagree on what kind of NTSB reports, and what portions of NTSB reports, are admissible in evidence.  The parties seem to agree that purely factual reports are admissible.  The parties disagree on whether factual portions of an NTSB safety recommendation or probable cause determination are admissible, with Plaintiff contending that no portion of such documents are admissible and Defendants contending that factual portions of such documents are admissible.  The Court directed the parties to confer about the specific documents that will be presented by the parties and to agree, to the extent possible, on which documents or portions of documents are admissible.  The parties shall be prepared to provide the Court with copies of disputed portions of documents at the hearing on July 1-2, 2008.  The Court will then rule on the admissibility of these disputed portions.  For this reason, the Court **denied** Plaintiffs' Motion in Limine No. 4 without prejudice to the issues to be addressed at the July hearing.

    9.    The Court addressed Plaintiff's Motion in Limine No. 5 (Dkt. #73).  For reasons stated on the record, the Court **denied** the motion.  The Court will not preclude defense experts Heaslip and Kadlec from expressing opinions on the air speed, descent rate, and attitude of the aircraft during the accident.

    10.    The Court addressed Plaintiff's Motion in Limine No. 6 (Dkt. #74).  For reasons stated on the record, the Court **denied** the motion.  The Court concluded that Ms. Velez may testify about matters she observed and experienced.  The Court will consider objections to her lay opinion testimony at trial.  Because the Court has not yet been provided with a transcript of Ms. Velez's testimony concerning statements allegedly made to her by Mr. Mezaki, the Court could not consider whether the statements were admissions against interest.  Nor could the Court consider whether Mr. Mezaki's statements to Ms. Velez are admissible as statements against interest by a decedent whose fault is attributable to Plaintiff.

- 4 -

Because the Court must address these issues during trial, the parties should not mention the statements allegedly made by Mr. Mezaki to Ms. Velez until after the Court has ruled on their admissibility.

11. The Court considered Defendants' Motion in Limine No. 1 (Dkt. #80). Because it appears that Exhibits 19 and 20 – 2003 versions of the aircraft's flight manual – and Exhibits 45, 47, and 49 – the entire flight manual, the maintenance manual, and the parts catalog – fall within Rule 407 as subsequent remedial measures, the Court **granted** Defendants' motion. If Plaintiff believes that some or all of these exhibits may be used as impeachment evidence within the meaning of Rule 407, Plaintiff may raise that issue during trial. The Court notes, however, that *Weinstein's Federal Evidence* states that Courts should exercise "special care" when applying the impeachment exception of Rule 407 because there is a risk of undercutting the policies of Rule 407. Almost all corrective actions can be said in some sense to contradict the defendant's assertion that he was exercising due care. Courts, according to Weinstein, should therefore require a clear nexus between the remedial measures and the specific statements to be impeached. *See Weinstein* § 407.07[1] at 407-33. Because the Court cannot tell today whether the documents at issue in Defendants' Motion in Limine No. 1 will constitute such direct impeachment of evidence to be presented by Defendants during trial, the Court cannot conclude that the documents will be admissible for impeachment purposes. For this reason, the Court granted the motion, but did so without prejudice to Plaintiff seeking to use the documents as impeachment at trial.

12. The Court considered Defendants' Motion in Limine No. 2 (Dkt. #81). This motion concerned a service letter issued by Defendants in 2006, some three years after the accident. The Court concluded that the service letter constituted subsequent remedial measures within the meaning of Rule 407. The document was not relevant to Defendants' knowledge because it post-dated the accident. The Court therefore **granted** the motion, but did so without prejudice to Plaintiff raising the question at trial of whether this document may be used for impeachment under Rule 407. (See discussion in paragraph11 above.)

13.     The Court considered Defendants' Motion in Limine No. 3 (Dkt. #82).  For reasons stated on the record, the Court **denied** the motion with respect to Exhibit 8, a pre-accident service bulletin that implemented use of the new Poly V belt.  Because this was not a post-accident measure, it is not precluded by Rule 407.  Nor is it precluded by A.R.S. § 12-686 because it goes to Defendants' knowledge of possible problems with the hydraulic assembly before the accident in question.  *See Readenour v. Marion Power Shovel*, 719 P.2d 1058, 1063 (Ariz. 1986) (pre-accident product modifications can provide "strong evidence" that defendant had knowledge of the danger posed by the design of the product and of the precautions necessary to correct the problems; "[s]ince plaintiffs advance both negligence and strict liability theories of recovery, this knowledge was relevant to the issue of whether the danger from the design of its product was foreseeable to defendant," which "in turn, [is] a factor which plaintiffs must prove in order to prevail on a negligent design theory").  The Court **granted** the motion with respect to Exhibits 91 and 92 which are post-accident remedial measured barred by Rule 407.  If Plaintiff believes that these exhibits may be used as impeachment under Rule 407, she may raise this issue with the Court during trial.  (See discussion of impeachment in paragraph 11 above.)

14.     The Court addressed Defendants' Motion in Limine No. 4 (Dkt. #83).  This motion concerned an NTSB safety recommendation.  Because Plaintiff's counsel took the position at the Final Pretrial Conference that all portions of a NTSB safety recommendation are precluded from evidence by federal law, Plaintiff conceded that this motion is well-taken.  The Court accordingly **granted** the motion, without prejudice to Plaintiff raising this issue at trial if the Court rules, as a result of the July hearings, that factual portions of NTSB safety recommendations are admissible.

15.     The Court addressed Defendants' Motion in Limine No. 5 (Dkt. #84).  This motion concerned Canadian Airworthiness Documents marked as Exhibits 12 and 13. Assuming Plaintiff can provide authentication for these documents under Rules 901 or 902, the Court concludes that two portions of the documents are not barred as hearsay.  These include the statements in Exhibit 12 recommending a pre-flight accumulator check (a

- 6 -

1 recommendation that Plaintiff claims put Defendants on notice of potential accumulator 2 problems), and a statement in Exhibit 13 in which Eurocopter confirmed, in a meeting with 3 the Canadian TSB and French authorities, that uncommanded movements can occur when 4 one lateral accumulator is depleted and the other is charged.  The Court concluded that the 5 Canadian documents overcome hearsay problems through Rule 803(8), and that the specific 6 statement attributed to Eurocopter in Exhibit 13, although an additional level of hearsay, 7 appears to be a party admission and, in any event, is reasonably trustworthy.  The Court 8 therefore **denied** Defendants' Motion in Limine No. 5 with respect to the specific statements 9 in Exhibits 12 and 13 identified above.  If Plaintiff seeks to introduce any other portions of 10 these exhibits, Plaintiff shall raise this issue with the Court outside the hearing of the jury.

11      16.    The Court considered Defendants' Motion in Limine No. 6 (Dkt. #85).  This 12 motion concerned Australian military reports marked as Exhibits 52 and 53.  Because copies 13 of these reports were not provided with the motions, the Court cannot rule on their 14 admissibility.  The Court therefore **denied** the motion without prejudice.  The Court does 15 have concerns about the authentication described by Plaintiff in its response, about the 16 similarity of these events to the accident in question, and about whether the Australian 17 documents are really untested expert opinions.  These matters will be addressed, however, 18 after the Court reviews the reports in the context of the trial.  Because the Court has not ruled 19 on the admissibility of these documents, they should not be mentioned by the parties prior 20 to the Court's ruling.

21      17.    The Court considered Defendants' Motion in Limine No. 7 (Dkt. #86).  The 22 Court concluded that it must hear from Plaintiff's experts before deciding whether their 23 hydraulic exemplar test should be admitted in evidence.  This matter will be addressed at the 24 hearing to be held on July 1-2, 2008.  This motion will be **taken under advisement** until that 25 time.

26      18.    The Court considered Defendants' Motion in Limine No. 8 (Dkt. #87).  The 27 Court will address these *Daubert* and Rule 702 issues with respect to expert witness Coffman 28

- 7 -

1  at the hearing to be held on July 1-2, 2008. The motion will be **taken under advisement**
2  until that time.

3  19. The Court considered Defendants' Motion in Limine No. 9 (Dkt. #88). The
4  Court ruled on Exhibit 155 in connection with Plaintiff's Motion in Limine No. 2. The Court
5  **denied** the motion with respect to Exhibit 89, concluding that it is not covered by Rule 407
6  because it is not a post-accident modification; it is not precluded by A.R.S. § 12-686 because
7  it is relevant to Defendants' knowledge under *Readenour*; and it is not hearsay because it is
8  a party admission. The Court **granted** the motion with respect to Exhibit 6, concluding that
9  it is a post-accident modification barred by Rule 407. The Court **granted** the motion with
10 respect to Exhibit 154, an Australian government document. Because the document is not
11 mandatory and appears to have been created in collaboration with Defendants, the Court
12 concluded that admitting the document would be contrary to the policies of Rule 407. (See
13 discussion in paragraph 6 above and *Weinstein's Federal Evidence* §407.05[3].)

14 20. The Court considered Defendants' Motion in Limine No. 10 (Dkt. #89). The
15 motion concerns a technical information letter marked as Exhibit 7. The Court **denied** the
16 motion with respect to the following two statements from the letter: (1) "Any helicopter
17 equipped with an assisted or servo-controlled flight control system must include a
18 replacement system which is immediately available in the event of a single failure of the
19 power part, to enable flight to be continued safety until landing"; (2) "the most frequent
20 causes of hydraulic failure are associated with the hydraulic pump drive." These are
21 admissions by Defendants and are not subsequent remedial measures. The Court **granted**
22 the motion with respect to other portions of Exhibit 7, concluding that they were covered by
23 Rule 407 as subsequent remedial measures. As with the other 407 rulings, Plaintiff may
24 assert to the Court during trial that the document is admissible as impeachment. (See
25 discussion of impeachment in paragraph 11 above.)

26 21. The Court considered Defendants' Motion in Limine No. 11 (Dkt. #90). The
27 Court will address this *Daubert* and Rule 702 motion with respect to Plaintiff's expert
28 witness Moffat at the hearing on July 1-2, 2008.

- 8 -

22.     The Court considered Defendants' Motion in Limine No. 12 (Dkt. #91). Plaintiff's counsel agreed that Exhibits 24, 25, and 100 were created by Air Data, a company that obtained information from the FAA. Because the documents created by Air Data are hearsay, and no exception to or exclusion from the hearsay rule has been identified, the Court **granted** the motion. The Court declined Plaintiff's suggestion that Plaintiff be permitted to substitute certified FAA documents for the Air Data documents. Certified FAA documents are not identified as exhibits in the Final Pretrial Order, Plaintiff has had ample time to obtain them, and precluding Plaintiff from introducing them now will, therefore, not constitute manifest injustice. *See* Fed. R. Civ. P. 16(e).

23.     The Court considered Defendants' Motion in Limine No. 13 (Dkt. #92). This motion sought to preclude Plaintiff's experts from rendering opinions about helicopter piloting. This is a matter that must be addressed during the expert's testimony at trial. The motion was therefore **denied**.

24.     The Court considered Defendants' Motion in Limine No. 14 (Dkt. #93). This motion concerned Exhibits 3 and 4, documents created 24 and 23 years before the crash, respectively. The Court concluded that it could not determine the relevancy of these documents to Defendants' knowledge of hydraulic system properties until it understood the evidence at trial. The Court therefore **denied** the motion. The parties should not mention these documents, however, until after the Court has ruled on their admissibility.

25.     The Court considered Defendants' Motion in Limine No. 15 (Dkt. #94). This motion concerned the aircraft design certification opinions of Plaintiff's expert Livick. The Court concluded that it could not rule on these issues until Mr. Livick testifies at trial, and therefore **denied** the motion.

26.     The Court ordered the parties to engage in a good faith settlement conference on or before July 30, 2008. The settlement conference shall be held before Magistrate Judge Anderson. The parties should immediately contact Judge Anderson's chambers to schedule the settlement conference and determine the preparation needed for the conference. The

1 Court ordered the parties to have client representatives present for the settlement conference,
2 but stated that representatives of Defendants' french entity may be available by telephone.
3      27.    The parties shall provide a revised witness list on the day of trial to be read to
4 the jury during voir dire.  The witness list shall include only witnesses identified in the Final
5 Pretrial Order.
6      DATED this 6th day of May, 2008.

*[signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge